So Ordered.

Signed this 30 day of August, 2023.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

Michael Edward McCaffrey, Sr.

                Debtor.

Case No. 21-30891
Chapter 7

Steven R. Dolson, Esq.
*Chapter 7 Trustee*
6320 Fly Road, Suite 201
East Syracuse, New York 13057

Theodore Lyons Araujo, Esq.
*Attorney for Debtor*
Bankruptcy Law Center
Bodow Law Firm PLLC
P.O. Box 698
Syracuse, New York 13201

**Memorandum-Decision and Order on
the Trustee's Motion for Turnover Pursuant to 11 U.S.C. § 542(a) and
Motion for Violation of the Automatic Stay and/or Contempt Against the Debtor**

    Before the Court is the Chapter 7 Trustee's ("Trustee") Motion for Turnover Pursuant to

11 U.S.C. § 542(a) and Motion for Violation of the Automatic Stay and/or Contempt against the

1

Debtor (the "Motion" at Doc. 50).[1]  The Trustee seeks an order (i) directing Michael Edward McCaffrey, Sr. ("Debtor") to turnover at least $35,000.00 on the grounds that such funds are property of the bankruptcy estate, (ii) finding that Debtor exercised control over property of the estate in violation of 11 U.S.C. § 362(a)(3), and (iii) imposing sanctions pursuant to 11 U.S.C. § 362(k) for that violation.  Debtor opposes the Motion and seeks an Order denying the Motion with prejudice.  *See* Debtor's Response; Trial Tr. 94.

As required by Federal Rule of Civil Procedure 52 ("FRCP"), made applicable to this bankruptcy proceeding by Federal Rule of Bankruptcy Procedure 7052 ("FRBP"), the Court renders the following findings of fact and conclusions of law.  For the reasons detailed below, the Court grants the Motion in part in the reduced amount as set forth herein and denies the balance of the relief requested.

## **Jurisdiction**

The Court has core jurisdiction over the parties and the subject matter of this contested matter in accordance with 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (b)(2)(E).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The record consists of the Chapter 7 Voluntary Petition (the "Petition" at Doc. 1); Amended Individual, Schedule A/B, Schedule C, Schedule I, Schedule J, Summary of Assets and Liabilities and Certain Statistical Information, Declaration, Purpose of the Amendment ("Amended Schedules" at Doc. 15); Chapter 7 Trustee's Motion for Turnover Pursuant to 11 U.S.C. § 542(a) and Motion for Violation of the Automatic Stay and/or Contempt against the Debtor (the "Motion" at Doc. 50); Debtor's Response and Attorney Affirmation in Response to the Trustee's Motion ("Debtor's Response" at Doc. 53); the Trustee's Supplemental Brief ("Supplemental Brief" at Doc. 58); the Trustee's List of Witnesses and Exhibits ("Trustee's Exhibits" at Doc. 59); Debtor's List of Witnesses and Exhibits ("Debtor's Exhibits" at Doc. 60); Court's Witnesses and Exhibit Record ("Court's Witnesses and Exhibit Record" at Doc. 65); Transcript regarding Evidentiary Hearing Held 4/18/2023 ("Trial Tr." at Doc. 66); the exhibits admitted at the evidentiary hearing on April 18, 2023 (the "Exhibits"); the Complaint (the "UST Complaint" at Doc. 1) filed in Adversary Proceeding No. 22-50002 (the "Adversary Proceeding"); and the Default Judgment Denying Debtor's Discharge under 11 U.S.C. § 727(a)(2) and (5) (the "Default Judgment," Adversary Proceeding at Doc. 19).

2

**Background**

On November 30, 2021 (the "Petition Date"), Debtor filed a Chapter 7 Voluntary Petition (the "Petition"). On Schedule A/B, Debtor listed that he had $100 in cash. Debtor thereafter amended his Schedule A/B to reflect a cash balance of $50 (Doc. 15). He also scheduled 100% ownership interests in various businesses, including Real Cash Property, LLC and Basic Family, LLC. The Statement of Financial Affairs does not reflect any transfers made in the 2 years leading up to the filing.

After the 341 meeting was held and continued eight times, on the request of the Office of the United States Trustee ("UST") with Debtor consent, an Order granting a Rule 2004 Examination ("2004 Exam") was entered. Upon the conclusion of the 2004 Exam, the UST commenced the Adversary Proceeding against Debtor requesting Debtor's discharge be denied pursuant to 11 U.S.C. § 727(a)(2), (4), and (5) based on, *inter alia*, his alleged concealment and dissipation of cash that was estate property.[2] Several of the allegations in the UST Complaint overlapped with the transactions at issue here. Because Debtor failed to answer or otherwise respond to the UST Complaint and Motion for a Default Judgment, the Default Judgment denying Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (5) was entered. After the disposition of the Adversary Proceeding, the Trustee filed the Motion.

---

[2] The UST alleged nine causes of action as follows: (i) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2) for concealing profits; (ii) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2) for concealing receipt and transfer of funds; (iii) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2) for concealing cash on hand as of the Petition Date; (iv) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4) for failing to disclose transfer of funds; (v) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4) for knowingly and fraudulently making false oaths in his schedules as to receipt of income; (vi) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4) for knowingly and fraudulently making false oaths in his Statement of Financial Affairs as to commissions received in 2019, 2020 and 2021; (vii) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4) for knowingly and fraudulently making false oaths in his schedules as to his interests in certain businesses; (viii) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4) for knowingly and fraudulently failing to disclose cash on hand as of the Petition Date; and (ix) Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5) for failing to satisfactorily explain the dissipation of cash assets prior to the Petition Date. *See* UST Complaint.

The Trustee asserts that while Debtor testified under oath at the nine 341 meetings and the 2004 Exam, he failed to account for the "whereabouts" of certain funds that were transferred in and out of his various bank accounts. *See* Motion at ¶ 19. Based on the doctrine of continued possession, the Trustee argues that a presumption exists that Debtor still had those funds on the Petition Date. *See generally* Trustee's Supplement. As a result, the Trustee seeks an order requiring immediate turnover from Debtor of at least $35,000.00 pursuant to 11 U.S.C. § 542(a). *See* Motion at ¶ 27. In addition, the Trustee claims that Debtor's actions in exercising control over cash that is an estate asset constitute a violation of 11 U.S.C. § 362(a)(3), entitling the Trustee to an award of sanctions, attorneys' fees and costs under Sections 362(k) and 105(a).

In response, Debtor acknowledges he has a very complicated banking and corporate formation history. *See* Debtor's Response at ¶ 5. However, he contends all of the funds referenced in the Motion were reported to the Trustee. *Id*. at ¶ 7. More importantly, a $35,000 post-petition deposit into a business account originated from a loan advanced by an unrelated third party after Debtor filed bankruptcy. *Id.* at ¶ 8. After oral argument was held on the Motion, the Court scheduled an evidentiary hearing (the "Hearing") that was held and concluded on April 18, 2023.

**The Testimony**

At the Hearing, Debtor appeared along with Theodore Lyons Araujo, Esq. as his counsel, and Steven R. Dolson, Esq. appeared as the Chapter 7 Trustee.[3] On direct examination by the Trustee, Debtor reviewed various deposits and withdrawals in the month leading up to the Petition

---

[3] The Trustee called Rita Cook, a paralegal at the Trustee's office as a witness to provide a foundation for the admissibility of certain of the Trustee's Exhibits, including retirement account statements and bank statements. The Court admitted Edward Jones Retirement Account statements and bank statements for accounts maintained by Debtor, Real Cash Property, LLC and Basic Family, LLC into evidence over the hearsay objection of Debtor's counsel under Federal Rule of Evidence ("FRE") 807. Courts have long recognized that bank statements may be admitted under the residual exception to hearsay because "bank documents, like other business records, provide circumstantial guarantees of trustworthiness because the banks and their customers rely on their accuracy in the course of their business." *United States v. Pelullo,* 964 F.2d 193, 202 (3d Cir. 1992). The requirements of FRE 807(A) through (C) were met and the interests of justice will best be served by admission of those statements into evidence.

4

Date from bank accounts owned individually and by Real Cash Property, LLC, and Basic Family, LLC. Debtor testified he was the sole member of Real Cash Property, LLC and Basic Family, LLC and had exclusive control over the respective businesses' bank accounts. Trial Tr. 38, 41. When questioned about each transaction, he stated he lacked an independent recollection of any of the deposits or withdrawals, but acknowledged the bank account statements for Debtor individually (Exhibit L), Real Cash Property, LLC (Exhibit M), and Basic Family, LLC (Exhibit N) included checks that appeared to have his signature. Trial Tr. 36-46.

With respect to his personal bank account, Debtor similarly testified he "did not recall" most deposits and withdrawals. In addressing the particular transactions identified in the Motion, the Trustee inquired as to a $2,000 withdrawal and $28,000 withdrawal on November 19, 2021, and a $2,350 withdrawal on November 29, 2021, from that account but Debtor did not remember the purpose or the location of the $4,350 in cash. However, Debtor recalled a prepetition transfer of funds to a retirement account and payment through cash withdrawals for certain business debts to contractors working on his businesses' real property. Trial Tr. 60, 87.

With respect to the business transactions, Debtor testified that he had formed various limited liability companies to purchase and "flip" properties because he also maintained a New York State real estate license and those business activities and bank accounts needed to be separate. Trial Tr. 56. In connection with the house flipping business, from August 2021 to the Petition Date, he estimated he had between 5-12 subcontractors working on construction projects. Trial Tr. 86. Paying in cash was his standard procedure because it was required by the contractors. Trial Tr. 60-63, 87. He continued to use the corporate entities of Real Cash Property, LLC and Basic Family, LLC after the bankruptcy filing, paying bills that were incurred by the businesses and for radio ads. Trial Tr. 46-47 and 66. When presented with a deed reflecting the transfer of real

property by Real Cash Property, LLC in 2022, he was able to explain the details of that $26,000 sale to Home Headquarters. Trial Tr. 53-55.

On examination by his counsel, Debtor testified that he obtained a $35,000 loan from Harriet Turner after the filing (the "Loan") and produced a copy of a loan agreement dated as of December 2, 2021 ("Loan Agreement;" Debtor's Ex. 1). Debtor stated that the deposit of $35,000 into the Real Property Cash, LLC account on December 6, 2021 came from the proceeds of that loan (the "Loan Proceeds"). When questioned about a $300 check payable to Harriet Turner dated December 1, 2021, before the Loan Agreement was executed, Debtor speculated he may have incorrectly dated the check for the alleged loan repayment, and noted it was not cashed until December 15, 2021. Trial Tr. 92.

At numerous points during the Hearing, Debtor unequivocally testified he did not have any cash on hand on the Petition Date. Debtor also described a recent early Alzheimer's diagnosis[4] that may be the cause of his confusion and inability to recall certain information. He admitted some of the answers he provided at the 341 meetings and 2004 Exam were incorrect but he felt compelled to respond even without the requisite knowledge because of pride. Trial Tr. 83. At the conclusion of the Hearing, the Court reserved on its decision.

## Discussion

I. **Turnover of Property of the Estate under 11 U.S.C. § 542(a)**

Under the Bankruptcy Code, Debtor has the obligation to surrender to the Trustee all property of the estate. 11 U.S.C. § 521(a)(4). "Where the turnover of property does not occur

---

[4] Debtor stated that within the last 12 months he was diagnosed with the initial stages of Alzheimer's disease. The Court allowed testimony by Debtor regarding that diagnosis but denied Debtor's request to have any medical records admitted into evidence without a proper foundation. Trial Tr. 84-85.

voluntarily, the Trustee has the authority to compel the Debtor to turnover the property. . . ." *In re Vasquez*, 581 B.R. 59, 65 (Bankr. Vt. 2018) (quotation omitted); *see* 11 U.S.C. § 542(a).

In a motion for turnover under Section 542, "the burden of proof. . . is at all times on the party seeking turnover [and] [t]hat party must establish a prima facie case." *In re Weiss-Wolf, Inc.*, 60 B.R. 969, 975 (Bankr. S.D.N.Y. 1986) (citing *Gorenz v. State of Illinois Dept. of Agriculture*, 653 F.2d 1179 (7th Cir. 1981)). To maintain "a cause of action for turnover, the trustee has the burden of proof, by a preponderance of the evidence, that . . . the property constitutes property of the estate. . . ." 5 Collier on Bankruptcy ¶ 542.03 (16th ed. 2023); *see also In re Ir. Bank Resolution Corp.*, 559 B.R. 627, 644 (Bankr. D. Del. 2016).

Property of the estate under Section 541(a)(1) is "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *City of Chicago v. Fulton*, 141 S.Ct. 585, 589, 208 L. Ed.2d 384, 388 (2021). The scope of Section 541(a) is expansive, but in essence, the estate's rights to which the Trustee succeeds can be no greater than those held by Debtor on the Petition Date. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n.8 (1983); *Demczyk v. Mutual Life Ins. Co. of New York (In re Graham Square, Inc.),* 126 F.3d 823, 831 (6th Cir. 1997). The phrase "as of the commencement of the case" in Section 541(a)(1) operates as a temporal cutoff, "meaning that property interests that exist and belong to a debtor when the petition is filed are included within the bankruptcy estate, whereas property interests that Debtor acquires after the bankruptcy filing are not part of the estate, subject to certain exceptions stated in section 541." *In re Brown*, 601 B.R. 514, 517 (Bankr. C.D. Ill. 2019) (citation omitted).

Under Section 542(a), "an entity. . . in possession, custody, or control, during the case, of property that the Trustee may use . . . under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of

7

inconsequential value or benefit to the estate."[5]  11 U.S.C. §542(a).  To prevail, the Trustee must establish "(1) that the property is or was in the possession, custody or control of an entity during the pendency of the case, (2) that the property may be used by the Trustee in accordance with § 363 or exempted by the debtor under § 522; and (3) that the property has more than inconsequential value or benefit to the estate." *Bailey v. Suhar (In re Bailey)*, 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008).  Again, the Trustee bears the burden of proof by a preponderance of the evidence. *Spradlin v. Khouri (In re Bruner),* 561 B.R. 397, 403 (B.A.P. 6th Cir. 2017).

Here it is not disputed that the funds at issue, if property of the estate, may be used by the Trustee in accordance with Section 363, and the amounts claimed would clearly have more than inconsequential value or benefit to the estate. The critical question is whether Debtor had the estate's cash in his possession, custody or control on the Petition Date that must be accounted for and delivered to the Trustee.

A. <u>The Withdrawals and Deposits from Debtor's Personal and Business Bank Accounts</u>

Debtor's testimony and the Exhibits demonstrated he primarily used cash for his personal and business transactions.  It was evident that he utilized the various bank accounts interchangeably and commingled funds between personal and company accounts. S*ee* Exs. L, M, and N.[6] Debtor's alleged failure to report and explain the dissipation of cash provided some of the grounds cited in the UST Complaint which resulted in the denial of Debtor's discharge.  The Court, however, declined to adopt the allegations in the UST Complaint as true and apply the doctrines

---

[5] An action to recover money or property generally requires an adversary proceeding. FRBP 7001(1). Rule 7001(1) provides an exception if the proceeding is brought by a trustee to compel a debtor to deliver property to the trustee. *Id*.  Such relief can be sought by motion. *See* FRBP 9014(a).

[6] Notably, although the Loan Agreement was between Debtor and Harriet Turner, the Loan Proceeds were deposited into the Real Cash Property, LLC bank account.

8

of collateral estoppel or *res judicata* when considering the Motion.[7]  It is well-established that the principle of collateral estoppel applies to bar relitigation of issues that were previously decided in a prior state court action.  *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991).  The Second Circuit held that there is "no reason to distinguish federal court judgments from their state court counterparts for these purposes," and held "bankruptcy courts must give federal court judgments the same preclusive effect other federal courts would."  *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 (2d Cir. 2019).  In order to invoke collateral estoppel, the party must establish "that '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'"  *Id.* (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).  Generally, the "actually litigated" prong bars a court from giving a default judgment preclusive effect.  *Id.*

Similarly, the doctrine of *res judicata* prevents parties or their privies to a final judgment on the merits from relitigating the issues that "were or could have been raised in that action."  *Rivet v. Regions Bank*, 522 U.S. 470, 476 (1998) (internal quotation omitted); *see Tucker v. Arthur Anderson & Co.*, 646 F.2d 721, 727 (2d Cir. 1981).  It "is a rule of fundamental repose important for both litigants and for society.'"  *Marina Dev., Inc. v. Algonquin Power Corp. (In re Franklin Indus. Complex, Inc.)*, 541 B.R. 14, 40 (Bankr. N.D.N.Y. 2015) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).  "Its purpose is to foster judicial economy and prevent piecemeal litigation."  *Id.* (citing *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 200 (2d Cir. 2010).  Res judicata is meant to: "(1) promote judicial economy by minimizing

---

[7] The doctrine of judicial estoppel, which precludes a party "from leading a court to find one way in one proceeding and then, because his interests have changed, leading the court to find another way in a subsequent proceeding," is not applicable to this case. *Sperling v. U.S.*, 692 F.2d 223, 228 (2d Cir. 1982).

9

repetitive litigation; (2) prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) provide repose by preventing a person from being harassed by vexatious litigation." *Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 146 (D. Conn. 2005) (quotations omitted).

*Res judicata* precludes the subsequent litigation of any defense or ground for recovery that was available to the parties in a prior action, whether or not it was actually litigated or determined. *Tucker*, 646 F.2d at 727. "To determine whether the doctrine of res judicata [applies], the Court must consider whether: (1) there was a prior decision that was a final judgment on the merits; (2) the litigants were the same parties; (3) the prior court was a court of competent jurisdiction; and (4) the causes of action were same." *State Street Houses, Inc. v. NYS Urban Development Corp. (In re State Street Assocs., L.P.)*, 323 B.R. 544, 557 (Bankr. N.D.N.Y. 2005) (citing *Corbett v. MacDonald Moving Servs.*, 124 F.3d 82, 87-88 (2d Cir. 1997)). Courts may invoke *res judicata* only after careful inquiry. *Brown v. Felsen*, 442 U.S. 127, 132 (1979).

While several of the issues and transactions identified in the Motion were also raised in the UST Complaint, they were not "actually litigated" or decided on their merits. No evidentiary hearing was held, and the default judgment denying Debtor's discharge does not contain any findings of fact or conclusions of law. Without litigation, the Court declines to give the Default Judgment preclusive effect.[8]

Against this backdrop, the Court first turns to the deposits and withdrawals from Debtor's personal bank account. Debtor's funds, whether in the form of a bank account or cash, are property of his bankruptcy estate under Section 541(a). 11 U.S.C. §541(a)(1). As noted, when asked about the deposits and withdrawals from Debtor's personal bank account, Debtor consistently testified "I don't recall." However, the bank statements admitted into evidence clearly show those deposits

---

[8] The Court advised the parties that issue preclusion and collateral estoppel were not going to be considered. Trial Tr. 22.

and withdrawals as identified by the Trustee: On November 18, 2021, a deposit of $32,921.10 was made, bringing the account balance to $35,058.99; then on November 19, 2021 two withdrawals of $28,000 and $2,000 were made, totaling $30,000; and on November 29, 2021 another $2,350 was withdrawn. *See* Ex. L pages 1, 3. With respect to the $28,000 withdrawal, a $28,000 deposit was made on the same date into the Real Cash Property, LLC account. Ex. M at page 3; Trial Tr. 85. Debtor was unable to explain the whereabouts of the $2,000 and $2,350 cash withdrawals but stated at the conclusion of his testimony that he did not have any cash on hand on the Petition Date. Trial Tr. 88.

Debtor testified generally that he moved money between accounts as he needed them for projects. Trial Tr. 60. Given this regular practice, the $28,000 withdrawal from Debtor's personal account and corresponding deposit on the same day into the Real Cash Property, LLC account, both at Community Bank, leads to the conclusion that those funds were transferred from Debtor to Real Cash Property, LLC.[9] The Court therefore finds Debtor was not in possession of the $28,000 on the Petition Date.

The record, however, is silent as to what Debtor did with the $2,000 and $2,350 cash withdrawals made in the 11 days leading up to the Petition Date. With the burden shifting to Debtor to provide a credible explanation or accounting of those funds, the Court finds his testimony insufficient to rebut the presumption created under the doctrine of continued possession. "Accepting as we do the finding that he did have it, it follows that in the absence of any explanation as to what he has done with it, he is subject to summary order to turn it over the Trustee; the inference being that he still has it in his possession or under this control." *In re Steinreich*

---

[9] In connection with the withdrawal of $28,000 on November 19, 2021, the Trustee acknowledged there is a corresponding deposit into another business account. Trial Tr. 96 (Trustee advising "[w]e have given credit of a $28,000 withdraw[al] that he actually moved over form [sic] his personal account to a corporate account").

11

*Associates, Inc.*, 83 F.2d 254, 255-56 (2d Cir. 1936), *cert. denied sub nom.*, 299 U.S. 571 (1936); *see also Seligson v. Goldsmith*, 128 F.2d 977, 978 (2d Cir. 1942). The Court will therefore direct the turnover of $4,350 from Debtor to the Trustee.

The Court now turns to the business transactions at issue. The Basic Family, LLC and Real Cash Property, LLC's bank statements admitted into evidence list certain transactions identified by the Trustee as subject to turnover. *See* Exs. M p. 1 and N p. 1. The Basic Family LLC bank account started with a balance of $73,590.70 as of November 1, 2021 but was reduced to $176.70 as of the Petition Date, as a result of, *inter alia,* $51,712 cash withdrawals or checks payable to cash. *See* Ex. N pp. 1-4. The statements for Real Cash Property, LLC showed the November 19, 2021 deposit of $28,000 referenced above with subsequent cash withdrawals of $18,700, leaving a balance of $9,318 as of the Petition Date. *See* Ex. M p. 1. Less than a week after the filing, on December 6, 2021, a $35,000 deposit was made into that account. See Ex. M p. 3.

There is no dispute that Debtor's 100% membership interests in the limited liability companies are property of the estate under section 541. 11 U.S.C. § 541(a)(1); Amended Schedule A/B (Doc. 15-1, pp. 3-4); Trial Tr. 35, 38, 41 and 61. However, the analysis is not that simple – Debtor's ownership in those entities does not mean their cash is property of the individual debtor's estate. As previously noted, the estate's rights to which the Trustee succeeds can be no greater than those held by Debtor on the Petition Date. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n.8 (1983); *Demczyk v. Mutual Life Ins. Co. of New York (In re Graham Square, Inc.),* 126 F.3d 823, 831 (6th Cir. 1997). No information was introduced into evidence on the companies' assets and liabilities, showing a positive net equity or cash balance, that demonstrates equity to warrant a distribution to Debtor. Debtor testified the businesses had outstanding obligations due that were incurred in the ordinary course of transacting business, and the Court is unable to conclude the

ownership values of $0 contained in Amended Schedule A/B is in error. In the absence of an adversary proceeding to pierce the corporate veil and pursue alter ego or fraudulent conveyance claims,[10] Basic Family, LLC and Real Cash Property, LLC are separate legal entities.[11] The Trustee's failure to have commenced the instant matter as an adversary proceeding and include Real Property, LLC and/or Basic Family, LLC as defendants is fatal to recovery of funds from the corporate entities. *See* Fed. R. Bankr. P. 7001(1) (requiring the commencement of an adversary proceeding to recover money or property to the trustee). In this case, even though Debtor and his companies used cash and commingled funds, the Court may not *sua sponte* advance those legal theories and disregard the corporate structure.[12] Consequently, the Court will not direct turnover of those funds.

B. The $35,000 Post-Petition Deposit

Finally, the Court must determine if the $35,000 deposit into the Real Cash Property, LLC account on December 6, 2021 was property of the estate as of the Petition Date. The Trustee alleges he has shown that immediately preceding the filing, Debtor was in possession of a significant amount of cash, having taken out at least $35,000 in withdrawals so there is a presumption he still had those funds when he filed. The Trustee also questions the validity of Debtor's alleged $35,000 loan transaction. The Court finds the Trustee has established his *prima*

---

[10] While the Trustee references alter ego in discussing the *Evans v. Robbins* case, he does not advance that argument. *See* Trustee's Supplement p. 4. Debtor's counsel correctly noted the Trustee did not seek to pierce the corporate veil, assert alter ego claims or recover the payments at issue. Trial Tr. 11.

[11] The equitable doctrine of piercing the corporate veil or recovery from an alter ego assumes that the corporation is liable for the obligation. *Morris v. New York State Dept. of Tax'n & Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 1160, 603 N.Y.S.2d 807 (1993). "Under New York law, 'claims for the imposition of liability against a defendant that rest upon allegations that such defendant is liable to the plaintiff because it is an alter ego of another entity who has not been joined as a defendant, renders the non-joined entity a necessary party.'" *Nebraskaland, Inc. v. Ryan (In re Ryan)*, Case No. 19-70203, 22 Bankr. LEXIS 2661, at *20 (Bankr. E.D.N.Y. 2022) (quoting *Intelligent Prod. Sols., Inc. v. Morstan Gen. Agency, Inc.*, 45 Misc. 3d 1225[A], 5 N.Y.S.3d 328, 2014 NY Slip Op 51708[U], at *2 (Sup. Ct. 2014)); *see also Mannucci v. Missionary Sisters of the Sacred Heart of Jesus*, 94 A.D.3d 471, 941 N.Y.S.2d 493, 494 (1st Dep't 2012).

[12] The Court is also not able to assess whether the value to the estate would not be inconsequential to satisfy the third prong required for turnover under Section 542.

*facie* case, so the burden shifts to Debtor to account for those transactions which he has not adequately explained.

The resolution of this issue hinges upon the Court's assessment of the credibility of Debtor's testimony. Debtor testified he entered into the Loan Agreement with Harriet Turner (Debtor's Ex. 1) and the $35,000 post-petition deposit was the Loan Proceeds. His personal bank statements show a $300 check payable to her dated December 1, 2021, which was allegedly the first loan repayment even though it predated the execution of the Loan Agreement. *See* Ex. L. Debtor surmised that he may have incorrectly dated the check and observed it was not cashed until December 15, 2021 after the loan was funded. Trial Tr. 92.

In the absence of contrary evidence, the Court finds Debtor's testimony credible regarding the source of the $35,000 deposit made on December 6, 2021. Since the Loan Agreement and Loan Proceeds both came into existence post-petition, they are not property of the estate subject to turnover. As previously noted, the phrase "as of the commencement of the case" in Section 541(a)(1) operates as a temporal cutoff, "meaning that property interests that exist and belong to a debtor when the petition is filed are included within the bankruptcy estate, whereas property interests that Debtor acquires after the bankruptcy filing are not part of the estate, subject to certain exceptions stated in section 541." *In re Brown*, 601 B.R. 514, 517 (Bankr. C.D. Ill. 2019) (citation omitted). Consequently, the Court will not compel turnover of the $35,000 Loan Proceeds to the Trustee.

**II.    Violation of the Automatic Stay under 11 U.S.C. § 362(a)(3) and Request for Sanctions under 11 U.S.C. §§ 362(k) and 105(a)**

The Trustee seeks a finding that Debtor violated the automatic stay imposed under Section 362(a)(3) by exercising control over cash that was property of the estate. The Court recognizes in certain circumstances, a debtor may be liable for violating the automatic stay. *McCord v. Sofer*

*(In re Sofer)*, 507 B.R. 444, 449 (Bankr. E.D.N.Y. 2014); *see* 11 U.S.C. § 362(a) (the filing of the bankruptcy petition "operates as a stay, applicable to all entities of … any act to… obtain possession or exercise control over property of the estate"). "Debtor can count himself among those so stayed." *Sofer*, 507 B.R. at 450.[13]

It is instructive to review the dual purposes of the automatic stay. It protects the debtor from its pre-petition creditors by stopping "all collection efforts, all harassment, and all foreclosure actions" while permitting the debtor "to attempt a repayment or reorganization plan. . . ." H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6296-97. The automatic stay similarly protects all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims. *Sofer*, 507 B.R. at 449.

Here, the Trustee is seeking to preserve and enhance the estate through the turnover of cash by Debtor. While the Court commends the Trustee's efforts, it nevertheless finds that the offending actions which the stay is designed to protect against are not present. To expand stay violations and assess damages and sanctions against a debtor in a case such as this one does not support the objectives of the statute. Such a ruling would effectively create an "enforcement arm" for Section 542(a) which is contrary to the Supreme Court's direction in *City of Chicago v. Fulton*. 141 S.Ct. at 592 ("Had Congress wanted to make §362(a)(3) an enforcement arm of sorts for §542(a), the least one would expect would be a cross-reference to the latter provision, but Congress did not include such a cross-reference or provide any other indication that it was transforming §362(a)(3)"). As a result, it concludes that Debtor has not violated the stay. Accordingly, the request for sanctions is denied.

---

[13] Debtor testified that he used the Real Cash Property, LLC bank account post-petition, but as noted herein, such account was not property of Debtor's bankruptcy estate and therefore, not subject to the automatic stay.

## CONCLUSION

For the foregoing reasons, the Court finds that the Motion is granted in part and denied in part. Debtor is hereby ordered to turnover $4,350 to the Trustee within 30 days from the date of this Memorandum-Decision and Order. A separate judgment and order will be entered by the Court. All other requests for relief are denied.

###